IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CHRISTOPHER TILLISCH, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 15-1144-JWL |
| CAROLYN W. COLVIN, ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Supplemental Security Income benefits (SSI) under sections 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.     Background**

Plaintiff applied for SSI benefits, ultimately alleging disability beginning February 16, 2012. (R. 11, 27, 119). Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. Plaintiff argues that the evidence does not support the ALJ's residual functional capacity (RFC) assessment

because the ALJ did not include limitations included in Dr. Koeneman's opinion, even though he purportedly accorded great weight to that opinion, and because the ALJ implied that inpatient psychiatric care resulting from situational stressors cannot constitute evidence of disability.  (Pl. Brief 9-11[1]).

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

---

[1]Plaintiff did not include page numbers in his briefs.  Therefore, the court has used the page numbers assigned by the software it uses to read the .pdf files stored in the courts Case Management/Electronic Case Filing (CM/ECF) system.

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the

economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds that Plaintiff's arguments misunderstand the ALJ's decision, and Plaintiff has shown no error in that decision.

## II.     Discussion

Plaintiff points out that the ALJ accorded great weight to the opinions of Dr. Koeneman, presented both in the report of his consultative examination and in his Medical Source Statement - Mental.  (Pl. Br. 9).  Plaintiff makes clear that he does not suggest error in the determination to accord great weight to Dr. Koeneman's opinions, but argues that the ALJ erred when he failed to include RFC limitations opined by Dr. Koeneman.  Id.  The limitations which he asserts the ALJ omitted are located in Dr. Koeneman's narrative report in which "Dr. Koeneman concluded that [Mr.] Tillisch['s] . . . psychiatric symptoms produced a moderate to intermittently severe limitation in applying his potential to work," but he argues that the ALJ "failed to include [RFC] limitations related to [Dr. Koeneman's] opinion that [Mr.] Tillisch would have intermittently severe limitations applying his potential in a work environment due to poor

impulse control and a dysphoric mood." (Pl. Br. 9) (citing R. 314). He argues that "Dr. Koeneman's opinion can be interpreted as stating [Mr.] Tillisch would have intermittent periods of decompensation that would prevent him from achieving a level of functioning capable [(compatible?)] with his baseline functioning," and the RFC assessed does not account for this level of decompensation. Id., at 9-10.

Plaintiff also points out that the ALJ acknowledged Plaintiff's inpatient psychiatric care, "but suggested that it was due to situational stressors rather than an acute mental illness." Id., at 11. He argues that the ALJ erred thereby in making "the improper inference that situational inpatient care cannot constitute evidence of disability." Id. (citing Witt v. Barnhart, Civ. A. 05-2447-JWL-JTR, 2006 WL 4101943, at *8 (D. Kan. Oct. 18, 2006) (Report and Rec., adopted at 2006 WL 3512953 (D. Kan. Dec. 5, 2006); and Larson v. Astrue, 615 F.3d 744, 751 (7th Cir. 2010)).

The Commissioner argues that the RFC assessed "is in line with the objective findings and opinions provided by examining medical sources Drs. Koeneman and Leonard." (Comm'r Br. 5). She argues that this RFC is supported by record evidence and should be affirmed. Id. She disputes Plaintiff's understanding, but argues that even if Dr. Koeneman can be understood to opine that Plaintiff will have intermittent periods of decompensation, the ALJ's understanding of that opinion, although different, is supported by the record evidence and the court may not reweigh the evidence and find Plaintiff's understanding of that opinion is preferable. (Comm'r Br. 5-6).

At step two of his analysis, the ALJ summarized Dr. Koeneman's report of his examination of Plaintiff and the medical source statement Dr. Koeneman prepared. (R. 14) (citing Exs. 12F, 13F (R. 311-320)). The court's review reveals that this is a fair summary of the documents cited. In his RFC analysis, the ALJ stated that he gave great weight to Dr. Koeneman's opinion "because he indicates moderate limitations, which is consistent with the medical evidence and the claimant's lack of mental health treatment." (R. 17).

Plaintiff agrees with the decision to give great weight to Dr. Koeneman's opinions, but argues that in doing so, the ALJ should have included RFC limitations related to Dr. Koeneman's opinion that Mr. Tillisch "would have intermittently severe limitations applying his potential in a work environment due to poor impulse control and a dysphoric mood." (Pl. Br. 9) (citing R. 314). The court finds the ALJ included such limitations.

On the fourth page of his narrative report, Dr. Koeneman provided a "Summary Statement" of his conclusions. It is this statement to which Plaintiff cites and upon which his argument relies. (R. 314). Here is Dr. Koeneman's Summary Statement:

> (1). Claimant appears capable of following and remembering simple instructions. Due to moderate deficits in short-term memory, claimant would do better at repetitive tasks. (2). He was able to attend to the questions and tasks asked of him during this examination without severe distractions and with adequate persistence. He appears capable of applying this potential to a work environment with mild to moderate decline in persistence as work related tasks increase in frequency and complexity. (3). Claimant reported a history of poor work performance due to difficulty getting along with coworkers and supervisors. He displayed adequate social interactions during this examination. He appears capable of applying this potential to a work environment, however, based on reported history, he

> may experience moderate to intermittently severe interference due to poor impulse control and dysphoric mood. (4). Due to recent history of substance dependence, claimant does not appear to be a good candidate to manage his own funds.

(R. 314) (numbering added). As noted by the numbering added to Dr. Koeneman's summary, the court discerns four areas of functioning reflected in that summary: 1. understanding, remembering, and carrying out instructions, 2. attention, concentration, and persistence, 3. social interaction, and 4. managing money appropriately. Plaintiff's allegation of error relates to the third area--social interaction.

In summarizing Dr. Koeneman's opinions, the ALJ specifically noted that Plaintiff "could interact socially, but might experience moderate to intermittently severe interference due to poor impulse control and dysphoric mood." (R. 14). As noted above, the ALJ accorded great weight to Dr. Koeneman's opinion. (R. 17). And, the RFC he assessed included a need for "socially isolated type of work with only occasional contact with co-workers, supervisors and the general public," and that work "with the general public should not be a primary duty." (R. 15). The RFC assessed by the ALJ reflects limitations to socially isolated work with only occasional contact, and no primary duty with the public as Dr. Koeneman's opinion regarding social interaction suggests. Plaintiff has shown no error in this regard.

First, as the Commissioner's Brief suggests, and contrary to Plaintiff's argument, Dr. Koeneman's opinion <u>cannot</u> be interpreted as stating that Plaintiff would have intermittent periods of decompensation. "Episodes of decompensation" is a term of art in

7

evaluating mental impairments, and the regulations explain that such episodes may be demonstrated by "an exacerbation of symptoms or signs that would ordinarily require increased treatment or a less stressful situation," and "may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household)."  20 C.F.R., Pt. 404, Subpt. P, App.1 § 12.00C (emphasis added).  Moreover, as the Commissioner also suggests, even if the opinion could also be interpreted as Plaintiff desires, the evidence supports the ALJ's understanding, and "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.  [The court] may not displace the agency's choice between two fairly conflicting views, even though [it] would justifiably have made a different choice had the matter been before it de novo."  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007) (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

     Second, Dr. Koeneman specifically opined that Plaintiff is capable of applying this potential for social interaction to a work environment, and he provided only an equivocal exception that "based on reported history he may experience moderate to intermittently severe interference due to poor impulse control and dysphoric mood."  (R. 314) (emphases added).  Dr. Koeneman expressed only the potential for interference with Plaintiff's social interactions, and the ALJ addressed this potential by limiting Plaintiff to

8

jobs requiring only occasional social contact and jobs where working with the public was not a primary duty.  Moreover, Dr. Koeneman's equivocal exception was "based on <u>reported</u> history," and the ALJ made the specific finding that Plaintiff's allegations of symptoms are not entirely credible.  This finding provides even less impact to the effect of Dr. Koeneman's equivocal exception.  And, Plaintiff does not argue that the ALJ's credibility finding is erroneous.

Plaintiff points to the results of the MCMI-III and Beck Anxiety Inventory testing performed by Dr. Lawrenz as evidence supporting Plaintiff's understanding of Dr. Koeneman's opinion and suggesting that the RFC limitations assessed are insufficient to account for the potential interference with his social functioning.  (Pl. Br. 12) (citing R. 241-42).  The Beck Inventory showed severe anxiety (R. 241), and the MCMI-III showed severe mental disorder, in which Plaintiff "most likely experiences an extended or recurrent pattern of withdrawal and brief periods of being immobile and unresponsive to his environment."  (R. 242).  And, the ALJ found that Plaintiff has severe anxiety disorder and panic disorder with agoraphobia, mental disorders which are <u>consistent</u> with Dr. Lawrenz's findings.  (R. 13).  Moreover, after administering the tests discussed in his report, Dr. Lawrenz recommended only that Plaintiff "seek a consultation with his physician to determine if pharmacotherapy is necessary" (R. 243), and "consider engaging in counseling or therapy to learn tools to assuage his anxiety and minimize his depressive symptoms."  (R. 244).  But, as the ALJ noted in his decision, Plaintiff "has had little to no mental health treatment by a licensed psychiatrist or psychologist," and the

"failure to seek medical attention is inconsistent with complaints of disabling anxiety and mental symptoms." (R. 16). Plaintiff has not shown that Dr. Lawrenz's testing requires greater mental limitations than those assessed by the ALJ.

Finally, Plaintiff argues that the ALJ erred in making "the improper inference that situational inpatient care cannot constitute evidence of disability." Id. (citing Witt v. Barnhart, Civ. A. 05-2447-JWL-JTR, 2006 WL 4101943, at *8 (D. Kan. Oct. 18, 2006) (Report and Rec., adopted at 2006 WL 3512953 (D. Kan. Dec. 5, 2006); and Larson v. Astrue, 615 F.3d 744, 751 (7th Cir. 2010)). However, Plaintiff's argument misunderstands the ALJ's decision.

In discussing the evidence, as Plaintiff' Brief suggests, the ALJ recognized that Plaintiff was hospitalized because of suicide attempts in late July 2012, and in January 2013. (R. 14-15). The ALJ also found that "[n]othing in the record indicates that he has ongoing suicidal ideation. The record indicates that he became suicidal for situational issues, such as his girlfriend breaking up with him or his daughter's death." (R. 16). The record evidence supports the ALJ's findings. (R. 248, (homeless, jobless, and girlfriend left), 293 (fiance left two days ago, daughter died about a week ago)). The decision reveals that the ALJ relied on the presence of situational stressors to demonstrate that although Plaintiff had attempted suicide twice, that was not because of ongoing suicidal ideation but because of particular negative events in his life. That is not an inference that situational inpatient care cannot constitute evidence of disability--or even that such care is not evidence to be considered in this case. Rather, it demonstrates that the ALJ

(correctly) considered that evidence and determined that the evidence demonstrates Plaintiff does not have ongoing suicidal ideation.

Plaintiff has shown no error in the decision below.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated this 7th day of April 2016, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**